# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **KAISLEE McCOY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action Number |
| **v.** ) | **3:21-cv-01389-AKK** |
| ) | |
| **CYPRESS LANDING, LP, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Brittany Vinson brings this suit on behalf of herself and her two daughters, Kaislee McCoy and Kharsyn McCoy, against Cypress Landing LP, their former landlord, and Irby Management Company LLC, which manages Cypress Landing. Doc. 1. The plaintiffs allege that Cypress Landing and Irby violated their rights under the Americans with Disabilities Act, the Fair Housing Act, and Section 504 of the Rehabilitation Act, by (1) discriminating against the plaintiffs on the basis of disability by denying requests to accommodate Kaislee's mental and physical disabilities, and (2) retaliating against them for making these requests by evicting them. *See id.* The defendants move to dismiss all claims, arguing that they either are time-barred or fail to state a plausible basis for relief. For the reasons that follow, the defendants' motion is due to be granted as to the ADA claims, Vinson's Rehabilitation Act discrimination claims accruing after October 18, 2019, and all

three plaintiffs' FHA discrimination claims accruing after the same date, but the motion is due to be denied in all other respects.

I.

Vinson and her daughters lived at Cypress Landing from 2015 through 2019. Doc. 1 at 5.  Kaislee, who is ten years old, "suffers from extreme autism and is deaf and blind."  *Id*. at 1-2.  Beginning in April 2018, and continuing through October 2019, Vinson asked the defendants to provide reasonable accommodations that would help ensure Kaislee's safety inside their home.  *Id*. at 4, 14.  Cypress Landing denied each of Vinson's twenty-plus requests "through undue delay in answering requests and/or denial of such requests."  *Id*. at 8, 10.

In September 2019, Vinson missed a rental payment for the first time.  *Id*. at 5.  This prompted Cypress Landing to ask Vinson to re-certify her income, and two days later to state that it would not renew Vinson's lease, citing the missed payment and Vinson's "fail[ure] to comply with housekeeping standards, fail[ure] to allow management inside the apartment with written notice, and failure to be respectful to management."  *Id*.  A month later, Cypress Landing initiated eviction proceedings in state court.  *Id*. at 6.  The district judge entered default judgment against Vinson, denied her motions to respond and to set aside the default, and issued a writ of possession to Cypress Landing.  *Id*. at 6-7.  Vinson and her daughters subsequently filed this lawsuit.  *See id*.

## II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require plaintiffs to plead "detailed factual allegations" fully outlining the merits of their case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In other words, construing the allegations in the light most favorable to the plaintiffs, the complaint "must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

## III.

The plaintiffs seek relief under the Rehabilitation Act, the Americans with Disabilities Act, and the Fair Housing Act. *See* doc. 1. However, in response to the motion to dismiss, the plaintiffs concede that Cypress Landing and Irby are not liable under the ADA. *See* doc. 15 at 4. Therefore, only the Rehabilitation Act and FHA claims are at issue.

3

### A.

The plaintiffs allege that the defendants violated the Rehabilitation Act by (1) denying their reasonable accommodation requests related to Kaislee's disabilities (Count 1), and (2) retaliating against them by initiating eviction proceedings (Count 3).[1]

### 1.

To state a discrimination claim under § 504 of the Rehabilitation Act, a plaintiff must plead that (1) she is disabled, (2) she was "otherwise qualified" for a program or activity, (3) she was excluded from the program or activity solely because of her disability, and (4) the program or activity was "operated by an agency that receives federal financial assistance." *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991). "It is widely accepted that under [the Rehabilitation Act], non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014). Cypress and Irby do not dispute the plaintiffs' standing or that the plaintiffs have adequately pleaded the requisite elements. Instead, they challenge the claims as time barred. *See* doc. 12 at 8-13.

---

[1] To the extent Vinson seeks relief for discrimination on the basis of her major depressive and anxiety disorders, *see* doc. 1 at 3, her claims are due to be dismissed. The plaintiffs passingly refer to Vinson's alleged disabilities in their claims for relief, but the complaint contains no factual content supporting an allegation that the defendants discriminated or retaliated against Vinson or her daughters on this basis. When discussing Vinson's claims, the court therefore refers only to her claims brought based on her association with Kaislee.

Alabama's two-year statute of limitations for personal injury actions applies to Rehabilitation Act claims. *Horsley v. Univ. of Alabama*, 564 F. App'x 1006, 1008 (11th Cir. 2014) (citing Ala. Code § 6–2–38). This limitations period is tolled for claims by minors until they reach the age of nineteen. Ala. Code § 6–2–8; *Bender v. Coram*, No. 2:14-CV-1583-KOB, 2015 WL 3385106, at *2 (N.D. Ala. May 26, 2015). Relevant here, where discrimination claims are based on the repeated denial of a string of accommodation requests, each individual denial constitutes a discrete discriminatory action, which then starts the limitations period for that specific denial. *Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 114 (2002)). Thus, if a plaintiff does not plead a basis for equitable tolling and is over the age of majority when her claim accrues, she cannot pursue a claim for any accommodation requests that were denied more two years prior to filing suit.

The great majority of Vinson's individual claims are barred by the statute of limitations. The plaintiffs initiated this action on October 18, 2021, meaning Vinson can only pursue claims for allegedly discriminatory conduct occurring after October 18, 2019. Vinson pleads that she made her "final request in October 2019," doc. 1 at 17, but she does not plead the exact date of this request. She also does not plead that she made any requests for accommodation after Cypress Landing issued its

5

notice of non-renewal on October 9, 2019.[2]  A statute of limitations bar, however, is "an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citation omitted).  Indeed, "for better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).  Vinson may thus maintain her discrimination claims for any accommodation requests that Cypress Landing denied after October 18, 2019.

By contrast, all of Kaislee's and Kharsyn's claims survive dismissal.  Both are under nineteen and are still covered by the tolling provision.  Doc. 1 at 2-4; *Bender*, 2015 WL 3385106, at *2.  Therefore, their discrimination claims for alleged failures to accommodate are not time-barred.  *See* Ala. Code § 6–2–8.

**2.**

The Rehabilitation Act incorporates the ADA's anti-retaliation provision, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 26 (11th Cir.

---

[2] Vinson contends that her claims did not accrue until November 2019 when Cypress Landing initiated eviction proceedings.  The Eleventh Circuit's guidance in *Abram* renders this argument unpersuasive.

2009) (citing 29 U.S.C. §§ 791(g), 793(d), 794(d); 42 U.S.C. § 12203(a)). And, "this court assesses retaliation claims pursuant to the Rehabilitation Act under the same framework used for Title VII retaliation claims." *Id*. This means that a plaintiff must show that (1) she engaged in a protected activity, such as requesting reasonable accommodations, (2) the defendant subjected her to an adverse action, and (3) a causal link exists between the protected activity and the adverse action. *See Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015) (applying Title VII retaliation framework to housing retaliation case).

### a.

Cypress Landing and Irby argue that the retaliation claims fail because the ultimate success of the eviction means that it was not "lacking a reasonable basis in law or fact." Doc. 12 at 16-17 (citing *Smith v. Miami-Dade Cty.*, 621 F. App'x 955, 960 (11th Cir. 2015)). But *Smith* is distinguishable from the instant case. In *Smith*, an employee entered into a settlement agreement with her former employer that released all employment-related claims. 621 F. App'x at 957-60. She subsequently sued her former employer, and after the employer countered for breach of the settlement agreement, she amended her complaint to allege that the counterclaim constituted unlawful retaliation. *Id*. The district court disagreed, and in affirming, the Eleventh Circuit relied on the specific terms of the settlement agreement to find

that the employer's counterclaim had a reasonable basis and thus could not support a retaliation claim under Title VII. *Id.*

Here, by contrast, at the motion to dismiss stage, the court does not have the requisite information to determine whether the eviction suit had a reasonable basis in law or fact. For example, the parties have not yet produced the lease agreement Vinson allegedly breached or any information about the eviction proceedings other than Cypress Landing's initial complaint and the writ of possession. *See* doc. 12-1. Further, Vinson alleges that the state court prevented her from responding to the eviction proceedings, *see* doc. 1 at 6-7, which casts doubt on whether the ultimate success of the eviction proves its reasonableness, *see* doc. 12 at 16-17. The court therefore declines to dismiss the retaliation claims on this basis.

### b.

The defendants also challenge the merits of the retaliation claim. There is no dispute that Vinson and her daughters requested reasonable accommodations and were subsequently evicted, satisfying the first two prongs of the *prima facie* case. The causal-relationship prong is construed broadly, such that "a plaintiff simply has to demonstrate that the protected activity and the adverse action are not completely unrelated." *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 246 (11th Cir. 2011) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "A plaintiff satisfies this element if she provides sufficient evidence that her

[landlord] had knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse action.'" *Id.* Relevant here, Vinson alleges that she made reasonable accommodation requests from April 2018 through October 2019, and that she received notice of non-renewal on October 9, 2019. Doc. 1 at 4-5. The defendants seek to avoid this close proximity by focusing on the initial requests: "[t]he fact that requests were made and allegedly denied [as early as April 2018], and those requests did not result in eviction, goes directly against plaintiffs' argument that the eviction in 2019 was a result of protected activity . . . or that the two events are causally related." Doc. 12 at 17. But Vinson's requests are not isolated events and must be construed as a whole. And when viewed in a light most favorable to the plaintiffs, the close temporal proximity between Vinson's final requests and Cypress Landing's non-renewal and eviction is sufficient to satisfy the causal-relationship prong.

Once the plaintiffs establish a *prima facie* case, the burden shifts to the defendants to articulate a legitimate, non-retaliatory basis for the adverse action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If they make this showing, the plaintiffs then bear the ultimate burden of proving that the proffered reason is pretext for a retaliatory one. *Id.* Cypress Landing has articulated non-retaliatory reasons for the eviction – most notably Vinson's non-payment of rent. But while Cypress Landing may ultimately prove that retaliatory animus

9

played no role in its decision, the court, at this juncture, must construe the facts in the light most favorable to the plaintiffs. In that regard, the plaintiffs plausibly allege that the proffered reasons were pretextual. For example, they claim that Cypress Landing did not evict other residents who purportedly missed several months of rent, but evicted Vinson almost immediately after her first missed payment. *See* doc. 1 at 5. Indeed, Vinson claims that her October requests may have been the proverbial straw that broke the camel's back, prompting Cypress Landing to evict Vinson "in retaliation for her requests for accommodations and modifications." Doc. 1 at 11-14. These pleadings are sufficient to plausibly allege a causal relationship between the eviction and the plaintiffs' protected activity. Therefore, the Rehabilitation Act retaliation claims survive dismissal.[3]

### B.

The plaintiffs also allege that Cypress Landing and Irby's denial of accommodations and subsequent initiation of eviction proceedings violated the Fair Housing Act (Count 7). The FHA prohibits housing discrimination based on an individual's disability. 42 U.S.C. § 3604. To state a failure to reasonably

---

[3] The defendants also argue that the court should dismiss the retaliation claims against Irby Management Company because Irby was not a party to the eviction proceedings. Doc. 12 at 15. But there is no dispute that Irby and Cypress Landing had an agent/principal relationship, and although the Eleventh Circuit has not yet decided the issue, "several circuits have found respondeat superior liability to apply to suits brought under the Rehabilitation Act." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012) (collecting cases). Irby is free to raise this argument again at the summary judgment stage, especially if discovery shows it played no role in the eviction. At this juncture, however, the plaintiffs' retaliation claims against Irby may proceed.

accommodate claim under § 3604, a plaintiff must plead four elements: "(1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (citing *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014)). A plaintiff states a claim for retaliation if she alleges that her landlord "coerce[d], intimidate[d], threaten[ed], or interfere[d] with" her exercise of rights granted under the FHA, including the right to request reasonable accommodations. 42 U.S.C. § 3617; *see Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 858 (11th Cir. 2010).

The defendants only argue for dismissal on statute of limitations grounds. *See* docs. 11 at 1-3; 12 at 13-14. Under the FHA, aggrieved persons can bring suit "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice," and this period is tolled only in the event of a pending administrative proceeding. 42 U.S.C. § 3613(a)(1). The plaintiffs argue that Alabama's tolling provision for minors, Ala. Code § 6–2–8, should apply to their FHA claims. Doc. 15 at 8-10. But in support of this contention, they cite cases applying state tolling provisions to claims under 42 U.S.C. § 1983, the ADA, and

11

the Rehabilitation Act – all of which, unlike the FHA, incorporate state limitations periods.  *Id.*; *see Hunt v. Georgia Dep't of Comty. Affs.*, 490 F. App'x 196, 197-98 (11th Cir. 2012).  The FHA's strict two-year limitations period, therefore, governs the plaintiffs' claims.

Accordingly, the only claims that the plaintiffs may pursue under the FHA are those accruing after October 18, 2019.  As discussed previously, the complaint, read most charitably to the plaintiffs, allows the inference that at least one of the requests for accommodation was denied after this date, and it is undisputed that Cypress Landing did not initiate eviction proceedings until November 2019.  Therefore, the FHA discrimination claims for alleged conduct occurring after October 18, 2019, and the retaliation claims, may proceed to discovery.[4]

## IV.

To close, the motion to dismiss, doc. 11, is due to be granted as to (1) the plaintiffs' ADA claims, (2) Vinson's Rehabilitation Act discrimination claims based on the denial of accommodation requests prior to October 18, 2019, and (3) all three plaintiffs' FHA discrimination claims based on those same denials.  The defendants'

---

[4] The defendants argue also that Irby cannot be liable for retaliation under the FHA because it was not a party to the eviction.  Doc. 12 at 15.  But "[t]hat the FHA allows for vicarious liability has long been settled."  *Boswell v. Gumbaytay*, No. 2:07-cv-135-WKW, 2009 WL 1515872, at *3 (M.D. Ala. June 1, 2009) (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)).  Thus, for the reasons mentioned previously, *see supra* n. 4, the court will not dismiss the plaintiffs' FHA retaliation claims against Irby at this juncture.

motion is due to be denied in all other respects. A separate order effectuating this opinion follows.

    **DONE** the 15th day of February, 2022.

                                                _____
                                               **ABDUL K. KALLON**
                                           UNITED STATES DISTRICT JUDGE